

FILED by _____ D.C.
ELECTRONIC

**FEB 27, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ROBERTO VIERA
       Petitioner,

# 09-20508-CIV-GOLDBERG/WHITE

vs.                              Docket No.: 05-20483-Godlberg

UNITED STATES OF AMERICA
       Respondent.
_____/

### PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX
### IN SUPPORT OF MOTION TO CORRECT VACATE, CONVICTION
### AND/OR SET-ASIDE SENTENCE AND CONVICTION
### PURSUANT TO TITLE 28 U.S.C. § 2255

COMES NOW, Roberto Viera with this his Memorandum of Law and Supporting Appendix in support of Motion to Correct and/or Set Aside Conviction and/or Sentence pursuant to Title 28 U.S.C. Section 2255 and in support provides as follows:

### SUMMARY OF THE PROCEDURAL HISTORY

1. A federal grand jury turned a three count of superseding indictment charging petitioner of conspiracy to import into the United States five kilograms or more of cocaine in violation of Title 21 U.S.C. § 952(a), § 960(b)(1)(B) and § 963 (Count 1), conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of Title 21 U.S.C. § 841(a)(1), § 841(b)(1)(A)(ii) and § 846 (Count 2) and attempt to possess with intent to distribute five kilograms or more of cocaine in violation of Title 21 USC § 841(a)(1), 841(b)(1)(A)(ii), and 846 (Count 3)(D. E. 48).

2.   Petitioner proceeded to trial where the jury convicted him of Counts 1 and 3; however, he was acquitted of Count 2, the conspiracy to possess charge.  (D. E. 74)

3.   Subsequently, Petitioner was sentenced to 262 months incarceration as to counts 1 and 3 to be served concurrent with each other.  The court also imposed a five year term of supervised release along with a $200.00 special assessment (D. E. 79).

4. Petitioner proceeded on appeal whereon September 5, 2007, the Eleventh Circuit Court of Appeals affirmed petitioner's sentence and conviction.  See *United States v. Viera*, 240 Fed. Appx. 356 (11th Cir. 2007)

5. A timely petition for Writ of Certiorari was sought where the United States Supreme Court denied the request on March 3, 2008.

6.   This timely request for Title 28 U.S.C. § 2255 to vacate and/or set aside conviction and sentence motion follows.

**STATEMENT OF THE FACTS**

**A. *Summary of undercover operation.***

In May of 2005, CI Marimon called Viera, claimed the capability of extracting cocaine from a particular airliner at the Miami International Airport.  Viera told Marimon he was disinclined to do so.  Marimon asked Viera if he would be willing to sell twenty-one kilograms of cocaine he planned to extract from the airport. Marimon asked Viera for $30,000 as payment.  Viera told Marimon he had no money to buy the cocaine.  However, Marimon offered to provide the cocaine and wanted to meet with Viera.  On May 23, 2005, undercover agent Nabut arrived with

2

twenty-one kilograms of sham cocaine. Viera told Marimon and the Agent that he did not want to do the deal. The cocaine was located in the backseat of the undercover agent's vehicle. Viera was taken into custody and arrested.

## ARGUMENT

## I. THE CONVICTION AND SENTENCE OF MR. VIERA IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### 1) The Performance of Counsel for Mr. Viera Fell Below an Objective Standard of Reasonableness during the Pre-Trial Phase

#### a. Strickland Performance Prong

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id*. 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

3

The Court clarified that this reference to "highly deferential scrutiny"[1] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[2] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also*: *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that,

> "a single, serious error may support a claim of ineffective assistance of counsel."

*Id. Kimmelman v. Morrison*, 477 U.S. at 384.

---

[1] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

[2] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v. Washington*, 466 U.S. at 691.

4

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance," even where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id*. 477 U.S. at 386.[3]

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy". *Id.,* 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.* 477 U.S. at 385

The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the
> time he decided to forego that stage of pretrial preparation and applying a
> 'heavy measure of deference', *ibid*., to his judgment, we find counsel's decision
> unreasonable, that is, contrary to prevailing professional norms. The

---

[3] See also *Murray v. Carrier,* 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same),

justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. See Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000)  In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[4] if counsel's specific acts or omissions are not demonstrably[5] the result of actual strategic choices made between or among all

---

[4] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U.S. at 365, 387, 390-91.

[5] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989)(record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer")(*citing Kimmelman v. Morrison*, 477 U.S. at 386); *Moffet v. Kolb*, 930 F.2d 1156, 1160-61(7th Cir. 1991)(counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley*, 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was " rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[6] Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

> "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id. Strickland v. Washington*, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. [7] *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [8]

---

[6] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra*, 878 F.2d at 711 (citing *Strickland*, 466 U.S. at 690-91); *Holsomback v. White*, 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996).

[7] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs*, 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[8] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

In the instant case, Mr. Viera has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

### b. Strickland Prejudice Prong

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

*Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case", [9] the Court specifically and explicitly rejected this argument by the government.

---

[9]This, of course, means that the 'plain error' standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano*, 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

8

In rejecting any outcome determinative test such as that employed in Federal

Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[10]

The Court further specifically rejected the application of the "actual prejudice"

standard of *United States  v. Frady*, 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584

(1982), to claims of ineffective assistance of counsel, with the following

admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady*, 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.*  at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

---

[10] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery*, 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor*, 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell*, was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell*, was limited to circumstances where the "different outcome" would be contrary to the law. *Id*. As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell,*:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland*. The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains  unchanged," *Id*. 506 U.S. at 373 (O'Connor) (concurring).

*Id. Strickland*, 466 U.S. at 697-98, 80 L.Ed.2d at 700.[11]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[12] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland*, 466 U.S. at 694-95*; United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[13]

---

[11] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

[12]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson*, 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[13] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell*, 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor*, 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor*. The Supreme Court's holding in *Lockhart v. Fretwell*, was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson,* (10th Cir. 2000)(citing *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon*, 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover*, 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[14]

The *Strickland* test for "prejudice" is applicable to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995),[15] with the caveat that "prejudice" in this type of case is

---

[14] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States,* 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States,* 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee,* 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham,* 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995)(same) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono,* 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

[15] *See also United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino,* 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson*, 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990)

limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction arid/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d 835 (2nd Cir. 2000). Specifically, Mr. Viera has made specific, sworn, factual allegations, in his § 2255 petition that he was prejudiced by the objectively unreasonable performance of counsel in the pre-trial and sentencing phases of his case.

Based on the foregoing facts and law, Mr. Viera has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

This meritorious claim of ineffective assistance of counsel constitutes both an independent ground for relief and also constitutes "cause" allowing the Court to reach the merits of Mr. Viera's claim of violation of his rights under the Sixth Amendment. *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) (the "failure of appellate counsel to preserve on direct appeal, matters that will be deemed meritorious on collateral review constitutes cause" under the analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 53 L.Ed 2d 594, 97 S.Ct. 2497 (1977) and

12

*United Stases v. Frady*, 456 U.S. 152, 167-68, 170 (1982)) (*citing Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989) (same)).

## A. PETITIONER PRESENTS THAT COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE HIM THE APPLICATION OF THE FEDERAL SENTENCING GUIDELINES AND HOW THE RELEVANT CONDUCT PORTIONS OF THE GUIDELINES WOULD BE USED TO CALCULATE HIS SENTENCE

Petitioner presents that at no time in the pre-trial stages of his case, did counsel ever take the time to present to Petitioner the application of the Federal Sentencing Guidelines and how the guidelines would be used to calculate his sentence if he pled or how the guidelines relevant conduct portions would be used to calculate his sentence if he proceeded to trial. There was not even a basic explanation of the guidelines and their application to Petitioner's case that would have allowed him to make a proper decision on whether to proceed to trial or plead as charged. There was never any explanation of the relevant conduct portions of the guidelines as they would be used to calculate the final sentence. As presented in the sworn affidavit of this case, had counsel taken the opportunity to advise Petitioner of the relevant portions of the guidelines and the extent of the sentencing impact that it would have in this case, Petitioner would have never proceeded to trial. Neither can the Government take the position that Petitioner was aware of the relevant portions of the guidelines from his prior interactions with the Federal or State Court system. Petitioner has never had any contact with any court system that would have exposed him to a guideline sentencing scheme or otherwise that would have shed some light into the possibility of pleading guilty.

13

In order to prevail on [an ineffective counsel argument], the defendant must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment" and that counsel's errors were prejudicial; that is, "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness. Petitioner has a right to competent counsel during the critical stages of the criminal process. *See Caruso v. Zelinsky*, 689 F.2d 435 (3rd Cir. 1982). Moreover, petitioner "has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (*citing Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Counsel's incompetent advice, violated the petitioner's Sixth Amendment right to counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

As an analogy, in *United States v. McCoy*, 215 F.3d 102 (D.C. Cir. 2000) counsel advised his client of an incorrect application of the Sentencing Guidelines. On appeal, *McCoy* argued that his plea was unconstitutional because it was based on ineffective assistance of counsel. The District of Colombia agreed; it found that *McCoy's* guilty plea had not been knowingly and voluntarily made. *Id.* Following this same analogy, Petitioner provides that his decision to proceed to trial was based on his attorney's failure to advise him of the application of the relevant

conduct of the sentencing guidelines.   There was never any explanation of the guidelines, the relevant conduct provisions nor how any sort of enhancement whatsoever could apply to this case.

The *McCoy* Court noted that "[W]hile not every error made in calculating an applying the guidelines would constitute deficient performance under *Strickland,* the Court emphasized that "familiarity with the structure and basic content of the Guidelines, had become a necessity for counsel who seek to give 'effective representation.'" *Id.* at 508  The Court further found that the prejudice prong of *Strickland* test was satisfied in that the difference between the sentencing ranges was so significant that there was a reasonable probability that if *McCoy* had been given correct information he would not have entered a guilty plea. *Id.*[16] Counsel's failure to advise Petitioner of the basic relevant portions of the Sentencing Guidelines  causes his actions to fall below a reasonable standard of performance because a "[c]riminal defense attorneys practicing in the federal courts are expected to keep abreast of issues that affect his client's case." *Id. United State v. Loughery*, 908 F.2d 1014 (D.C. Cir. 1990)

In Petitioner's cause, he must only show that there is a "reasonable probability" that the results of his decision to proceed to trial would have been different, *Id. Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and based on the sworn affidavit presented in this petition, it is clear that Petitioner

---

[16] Although Petitioner proceeded to trial based on his counsel's misinformation of the relevant conduct portions of the Sentencing Guidelines, the same analogy as that presented by the *McCoy* Court can be reached in Petitioner's case.  Had it not been for the misinformation received by his trial attorney, Petitioner would not have accepted a plea of guilt.

15

made a decision after an incomplete set of facts. Had counsel properly taken the time to advise Petitioner how the relevant conduct portions of the sentencing guidelines applied to his case Petitioner would have pled and would not have proceeded to trial.[17] (See Appendix A)

Based on the record and the files before this Court, there is a reasonable probability that counsel's actions have reached a level of ineffectiveness as enumerated in *Strickland*. Furthermore, there could be no strategic reason why counsel can justify his failure to explain the implications of the guidelines relevant conduct section to Petitioner. *See United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995)(remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir. 1988)(absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

Accordingly, Petitioner respectfully prays this Honorable Court determine that counsel's actions have reached the level of ineffectiveness and remand for an evidentiary hearing on the merits raised herein.

---

[17] In fact, the decision to plead would have been irrespective of the plea agreement that was offered in this case that Petitioner, as of this date, has not seen, but is aware existed.

16

## B. TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE PETITIONER OF THE AVAILABILITY OF A PLEA AGREEMENT REACHED BETWEEN COUNSEL AND THE PROSECUTORS

Petitioner provides that his trial counsel rendered ineffective assistance, when counsel failed to advise petitioner of the availability of a plea agreement that was reached between the parties during the pretrial preparation stages of the case. Petitioner presents, via his sworn affidavit attached to this Title 28 U.S.C. § 2255, that at no point during the preparation of the pretrial of this case, did counsel ever advise him that the government had offered a plea agreement in the instant case.

The plea agreement issue was discovered when appellate counsel contacted Petitioner while preparing the direct appeal. At that stage Petitioner became aware via a letter received from appellate counsel (Appendix B) that the government had offered a plea agreement in this case that would have resolved the charges. Specifically, appellate counsel was advised *by the government* that a "five year" plea was offered and that Petitioner refused to accept the same. It is Petitioner's position, that at no stage during the preparation of this case, was he ever made aware that the government had made such an offer. In fact, Mr. Jorge Pujol, who attended all meetings between Petitioner and counsel provided a sworn affidavit in support of this Title 28 U.S.C. § 2255 that no discussion of the plea agreement was ever mentioned by Attorney Mourin. (See Sworn Affidavit C) All that was ever discussed, what the preparation of trial, not of a plea offer. *Id.* Actually, Attorney Mourin always assured Petitioner that there was no evidence and that the case

17

needed to proceed to trial and specifically that there was no plea offer ever made. *Id.*

After appellate counsel's revelation was discovered, Mr. Pujol returned to trial counsel's office to specifically obtain a copy of the plea offer that was made. At this stage, trial counsel reversed his position, (only after being confronted with the letter from appellate counsel), that in fact a plea offer was made in this case. (See Appendix D) Trial counsel did "not recall if it was a written plea or a verbal plea" but assured Mr. Pujol that Petitioner was only to serve "approximately 48 months incarceration." (See Appendix D) This relevation was not released to counsel until after appellate counsel's letter was revealed to him.

In the similar case of *United States Ex. Rd. Caruso v Zelinsky*, 689 F.2d 435 (3rd Cir. 1982), the defendant alleged that his counsel failed to communicate to him a plea offer. The *Caruso* court held that, "[t]he decision is for the accused to make... [and] failure of counsel to advise his client of a plea bargain.., constitutes a gross deviation from the accepted professional standard." *Id.* at 438 Also, in *United States v. Rodriguez*, 929 F.2d 747 (1st Cir. 1991), the First Circuit held that "there is authority which suggest that a failure by defense counsel to inform defendant of a plea offer can constitute ineffective assistance of counsel on ground of incompetence alone..." *Id.*

The Seventh Circuit in *Johnson v. Duckworth*, 793 F.2d 398 (7th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct 416, 93 L.Ed 2d 367 (1986), held that "in the ordinary case criminal defense attorney's have a duty to inform their clients of plea

18

agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the Sixth and Fourteenth Amendments." *Id.* at 902   The Fifth Circuit in *Beckman v. Wainwright*, 639 F.2d 252 (5th Cir. 1981), held that although an attorney need not "obtain defendant's consent to every trial decision," where the issue is whether to advise the client to plead or not "the attorney has the duty to advise the defendant of the available options and possible consequences" and failure to do so, constitutes ineffective assistance of counsel. *Id.* at 267

The Sixth Circuit in *Turner v Tennessee,* 858 F.2d 1201 (6th Cir. 1988) *vacated on other grounds*, 492 U.S. 902, 109 S.Ct 3208, 106 L.Ed 2d 559 (1989), *reinstated,* 726 F.Supp 113 (M.D. Tenn. 1989), *aff'd*, 940 F.2d 1000 (6th Cir. 1991), *cert. denied,* 112 S.Ct 915, 116 L.Ed 2d 815 (1992), held that an attorney's incompetent advise resulting in the defendant's rejection of a plea constitutes ineffective assistance of counsel. *Id.* at 1205

In addition, under the *Strickland* test a court deciding whether an attorney's performance fell below a reasonable professional standards can look to the A.B.A. Standards for guidance. *Id. Strickland*, 466 U.S. at 688.   The A.B.A. standards of criminal justice provides in relevant part:

> Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contender is ultimately made by the defendant.

*Id.* A.B.A. Standards of Criminal Justice, 14-32

The A.B.A. Criminal Justice Standards provide that the ***conclusion*** of a plea agreement should ultimately be decided by the defendant. The use of the term "conclude" implies that the client's consent is needed whether the decision is to accept or reject a plea offer. While *Strickland* explicitly stated that the A.B.A. Standards, "are only a guide," *Strickland,* 466 U.S. at 688, the standards support the conclusion that, accepting Mr. Viera's allegations as true, defense counsel's conduct fell below reasonable standards. Based on both the A.B.A. Standards and the law of the circuits, this Court must agree that counsel's failure to communicate the Government's fourth plea offer to Petitioner, constitutes unreasonable conduct under prevailing professional standards.

## 1. **Appropriate Remedy**

Since Petitioner has shown actual ineffective assistance of counsel, the District Court will have to fashion a remedy that is "tailored to the injury suffered and [does] not necessarily infringe on competitive interests." *United States v. Morrison*, 449 U.S. 361 (1981) Since the remedy for counsel's ineffective assistance should put the defendant back in the position she  would have been in if the Sixth Amendment violation would not have occurred, in certain circumstances granting a new trial may not be the appropriate remedy.

The solution to the problem appears to be straight forward. Requiring the government to reinstate it's original plea offer is constitutionally permissible. *See Mabry v Johnson*, 467 U.S. 504, 510 (1971) *See also Partida-Parra*, 859 F 2d at 633, [noting that in certain circumstances "it may be appropriate for the court to order

20

'specific performance' of the [plea] bargain."] Thus, were as here, the defendant was deprived of the opportunity to accept a plea offer, putting Mr. Viera in the position he was in prior to the Sixth Amendment violation originally will involve reinstating the original offer.

Requiring the government to reinstate its original offer would also accommodate the policy articulated by the Supreme Court in *Kimmelman v Morrison*, 477 U.S. 365 (1986), where the court held that ["the constitution constraints our ability to allocate as we see fit the ineffective assistance. The Sixth Amendment mandates that the State [or Government] bear the risk of constitutionally deficient assistance of counsel." *Id.* at 379, 106 S.Ct at 2585

Under *Kimmelman*, even if one might perceive that the Government's competing interest might be infringed by requiring that the original offer be reinstated; a contrary result would impermissibly shift the risk of ineffective assistance of counsel from the Government to Mr. Viera.

Therefore, this Court must hold an evidentiary to determine why Petitioner Viera did not receive the Government's offer and apply the appropriate remedy.

21

## C. PETITIONER PRESENTS THAT COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO APPROACH THE AUTHORITIES WITH INFORMATION REGARDING COOPERATION THAT PETITIONER WAS ABLE TO PROVIDE

Petitioner provides that counsel rendered ineffective assistance when he failed to approach the authorities with information that petitioner had presented to counsel regarding law enforcement officers that were involved in the removal of kilos of cocaine from the Miami International Airport.

Petitioner specifically provided his attorney as detailed information regarding the law enforcement officer that was not debriefed by the government witnesses in this case. Petitioner provided counsel detailed dates, facts, and descriptions of the law enforcement officers that were involved in the drug transaction of the instant case in an attempt to secure a sentence reduction and/or a favorable plea agreement as a result thereof. Unknown to Petitioner at the time, the government had already offered a plea agreement in this case, so the additional desire to cooperate could have mitigated that sentence even lower.[18]

Petitioner presents that counsel armed with the cooperation information that he had provided at the time and the government's desire to offer a plea agreement in this case to mitigate the sentence, counsel had a professional obligation to proceed to the authorities and advise them of the possibility of Petitioner providing information that could assist in the prosecution of this case. Since Petitioner did not know the possibility of securing a plea agreement, Petitioner relied in all

---

[18] It is unknown the exact terms of the plea agreement or how the 60 month term of incarceration was determined, since no formal plea agreement has been viewed in this case. The petitioner is aware of the plea agreement since appellate counsel contacted the AUSA assigned to this case who advised him that a plea offer was made.

22

respects on the assistance of counsel in making the determination whether to proceed to trial or attempt to resolve the matter. In fact, it was Petitioner's desire to resolve the matter. Irrespective when this Court reviews the fact that Petitioner provided counsel cooperation information, coupled with the fact that a plea agreement was offered which would have perfectly fit into place with the information that Petitioner was willing to provide in order to resolve the matter, counsel had an obligation not only to advise Petitioner of the available plea agreement as presented herein, but was also under an obligation to proceed to the government with the information that Petitioner had provided.

Accordingly, the court must agree that the granting of an evidentiary hearing in order to review Petitioner's statement involving the cooperation he would have provided in order to secure a favorable plea agreement and counsel's statement must be reviewed via an evidentiary hearing to determine the proper facts of this case.

## D. PETITIONER PRESENTS THAT COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO CLARIFY TO THE COURT THAT THERE WERE FACTUAL STATEMENTS MADE DURING THE TRIAL THAT DIRECTLY CONTRADICTED THE PROBATION OFFICER'S DETERMINATION CONCERNING THE ROLE IN THE OFFENSE ENHANCEMENT

Petitioner presents that counsel was ineffective when he failed to clarify to the court that the testimony presented during the case conflicted with the probation officer's determination that Petitioner should be held responsible for the manager or supervisor sentence enhancement according to the pre-sentence investigation report

under ¶ 30.[19] Counsel's position during the sentencing hearing was not that Petitioner was not a supervisor or manager of anyone involved in the conspiracy, but rather that Petitioner was merely a *middleman* and not a manager of the charged offense.

However, counsel had in his possession and for his review the trial transcripts which established that long before Petitioner's criminal involvement in this case, defendant Gabriel Marimon, *hired two individuals* which were in charge with "supervising" the offense. Specifically, the evidence of trial proved that long before the criminal involvement involving Petitioner, Gabriel Marimon hired both individuals that allegedly Petitioner was charged with "supervising." The evidence further reflected that Gabriel Marimon used the same people many, many years before Petitioner even came to this country to help him smuggle drugs out of the airport. In fact, defendant Paz was involved with Marimon since 1994, eight years prior to Marimon even meeting Petitioner.

For example, on February 14, 2006, (See Tr. pg. 233) *Paz testified that he had been taking drugs off airplanes since 1994*. Counsel had in his possession, the testimony to establish that Burro Blanco, the alias for Marimon, was the liaison for the Columbians that delivered the cocaine. (See Tr. pg. 235). According to the trial transcript, defendant Paz was doing business with Marimon since 1998. (Tr. at

---

[19] Although the Court addressed this issue during the sentencing hearing and determined otherwise, the issue is being raised from the position that trial counsel had in his possession, conflicting statements from the actual trial that would have established that that the enhancement for leader/organizer was erroneously applied. The issue presented is whether counsel was ineffective for his failure to review the sentencing transcripts that would have established that the enhancement was not appropriate.

24

236).  Independent of Petitioner's involvement, Paz worked in the airport and had access to the planes and was a drug trafficker since 1994 and worked for Marimon since at least 1998.  Furthermore, Paz was also asked during the trial to describe a 2004 June or July drug deal involving Marimon.  Paz testified that "there was a gentleman by the name of Leyva, he got arrested, and instead of dealing with him, *Paz would deal directly with Burro Blanco*." *Id.*  The testimony at trial on page 238 established that a deal had been worked in 2004 and presents who was in charge of the deal and who supervised the deal.

Counsel had in his possession the documents to establish that it was Marimon who was the actual person in charge as the leader organizer of the conspiracy and not Petitioner himself.  Counsel had the ability to go through the deal by deal transactions of the conspiracy, show what was done, and by whom, and to dispute the prosecutor's allegations that Petitioner was somehow involved as a supervisor of the charged offense.

The evidence presented during the trial, which was readily available to trial counsel at all stages, clearly would have established Petitioner's inability to be charged as a leader, organizer, or supervisor of the charged offense.  The specific trial testimony presented in this case established the sequence events and the hierarchy of the conspiracy as it was laid out, which would have aided counsel in preparing a proper argument during the sentencing hearing to defend Petitioner's non-involvement as a leader organizer.   Merely expressing to the court that

25

Petitioner was "a middleman" does not support the defense required to establish otherwise as per the transcripts of this case.

Accordingly, based on the transcripts of this case, it is clearly established that Petitioner could not have been held liable for the leader organizer role enhancement.   Had counsel properly prepared a sentencing memorandum establishing otherwise, this court must agree that there is a reasonable probability that the erroneous enhancement for leader organizer would not have been applied in Petitioner's case.   The granting of an evidentiary hearing will be required in order to determine the extent of prejudice that Petitioner is suffering as a result thereof.

## E.   THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE VACATING THE CONVICTION, RESENTENCING AND/OR AN EVIDENTIARY HEARING

Petitioner contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his conviction.   However, should the court disagree, then the cumulative effect of these errors deprived Petitioner of fair and just assistance of counsel.   "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999).

The errors here were many, they were all interrelated, and their cumulative impact was devastating to Petitioner's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel.

Wherefore, Petitioner respectfully prays this Honorable Court vacate Mr. Viera's conviction and sentence due to the cumulative effects of counsel's errors. In the alternate, Petitioner requests that an evidentiary hearing be granted to allow Petitioner and opportunity to address the facts of the issues raised and further develop the record.

## AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Mr. Viera has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pre-

27

trial process. Mr. Viera has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. Viera respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he can prove his case.

## CONCLUSION

**WHEREFORE** MOVANT Mr. Viera respectfully asks this Honorable Court to:

(A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. Viera's conviction and/or sentence be **VACATED**.

Done this **26**, day of February 2009

Respectfully submitted,

Law Offices of Henry E. Marines
HENRY E. MARINES, PA
Florida Bar No.: 7027229
9465 S.W. 72nd Street, Suite A-200
Miami, FL 33173
(305) 412-4443 Office
(305) 704-8217 Fax
e-mail: hm@henrymarineslaw.com

29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ROBERTO VIERA
          Petitioner,

vs.                          Docket No.: 05-2483-CR-GOLBERG

UNITED STATES OF AMERICA
          Respondent.
_____/

### SWORN AFFIDAVIT OF ROBERTO VIERA

Comes Now Petitioner Roberto Viera pursuant to penalty of perjury under Title 28 USC § 1746 with this his sworn affidavit in support of his Title 28 USC § 2255 motion to vacate and/or correct sentence and in support provides as follows:

1. I am the petitioner in the above-captioned case.

2. During the criminal pre-trial preparation in my case, I was initially represented by attorney Juan Mourin.

3. During the pretrial preparation, I provided specific detailed information regarding law enforcement officers that were involved in my crime removing drug "kilos of cocaine" from the Miami International Airport.

4. I advised my attorney specific details, dates, times and the names of the individuals that were involved in this crime.

5. I advised my attorney that one of the individuals that was removing drugs from the airport, was the Son of the confidential informant (CI) that was not charged in this crime. Apart from that, I provided my attorney information relating

$-\Lambda-$

to the locations and dates and times in which these officers were involved in these crime. The purpose was to attempt to secure a favorable plea offer.

6. I advised my attorney that I wanted to enter into a possible plea agreement with the information that I had provided and I requested that he attempt to secure an agreement based on the information I provided.

7. I never heard from my attorney the results of the information I had provided.

8. All I was advised was that the issue was proceeding to trial; however, I was never advised what, if anything, my prior counsel did with the information I had provided.

9. I was shocked upon reading my appellate attorney's letter, that the government had offered a five year plea in my case.

10. I had never heard of the plea offer prior to reading my appellate attorney's letter after my appeal was completed.

11. Had I known that the government had offered a plea in my case, I would have accepted the same and never would have proceeded to trial.

12. I did not know if the plea agreement that was offered by the government was a result of the information I had provided my attorney or if it was as a result of the government's offer in an attempt to resolve the matter.

13. Irrespective, had I known that a plea agreement was offered in this case, whether be it via the information I provided or whether be it by the government's attempt to solve the matter, I would have never proceeded to trail and would have accepted the plea of guilt.

14. Although the complete case file was released by my trial attorney to my family, that specific document of the plea agreement was not included in the case file.

15. At no point did I ever reject or refuse to accept a plea offer by the government.

16. I was constantly advised by my attorney that the only option in this case was to proceed to trial and I was not aware that a plea was ever made.

17. I was never advised by my attorney how the guidelines would be used to calculate my sentence, nor how the relevant conduct portions of the guidelines would be used to calculate my sentence. I never heard of the term relevant conduct, managerial role or acceptance of responsibility until I arrived to my federal institution.

18. Had I known that the guidelines would be based on drug quantities that would be determined at a later date, I would have never proceeded to trial and would have mitigated my sentence by pleading guilty in a timely manner, especially with the plea agreement that was never brought to my attention.

19. All that was ever presented to me, was that I had to proceed to trial and that there was no other option ever explained, regardless of the information I provided.

20. I respectfully submit the above statements as true as to the facts and my recollection of conversations that I had with my prior attorney.

Done this 25 day of February, 2009.

Respectfully submitted,

Roberto Viera

# NEIL M. SCHUSTER

SUITE 2C
555 N.E. 15th STREET
MIAMI, FLORIDA 33132

NEIL M. SCHUSTER *
ANDREW HORN
OF COUNSEL
*ALSO ADMITTED IN COLORADO

TELEPHONE (305) 416 - 0324
TELECOPIER(305) 416 - 0325
e-mail:nmschus@bellsouth.net

September 21, 2007

Roberto Viera
Reg. No. 65270-004
FCI Coleman Low
P.O. Box 1031
Coleman, FL 33521

RE:   *United States v. Roberto Viera*
      U.S.C.A. Case No. 06-13430-I
      District Case No. 05-CR-20483 Judge Richard W. Goldberg

Dear Roberto:

An application for writ of *certiorari* must be filed before the Supreme Court within 90 days (December 4, 2007) of the date of the entry of the order denying relief before the United States Court of Appeals for the Eleventh Circuit. That date was September 5, 2007. Yes, I do handle appeals to the United States Supreme Court and have received multiple remands, with directions, to the United States Court of Appeals for the Eleventh Circuit on discrete sentencing issues. I know of no particular basis for appeal except the following: May a court sentence a federal defendant for conduct for which the government tried and failed to obtain a valid jury verdict? This involves a Sixth Amendment based sentencing issue.

You should be advised that the filing of a petition before the United States Supreme Court is complicated and expensive. Simple printing costs can often exceed $3500. My fee to actually present an application, in the first instance, is $25,000.

With regard to the Section 2255 petition, any such application must be filed within one year of the September 5, 2007 decision, plus 90 days.

I do believe that you received questionable if not ineffective assistance of counsel in the sentencing context. Although you may not want to hear this, your case should have resulted in a guilty plea given the somewhat overwhelming evidence against you, particularly the videos and well orchestrated sting. I'm told by the prosecutor that he offered to five years and you refused to accept that deal. If I was your lawyer, I would strongly counsel due to take that deal. I don't know what happened



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ROBERTO VIERA,
      Petitioner,

vs.

Docket No.: 05-20483-CR-Goldberg

UNITED STATES OF AMERICA
      Respondent.
_____/

### SUPPLEMENTAL SWORN
### AFFIDAVIT JORGE PUJOL

COMES NOW, Petitioner, Jorge Pujol, *pro-se* pursuant to Penalty of Perjury under Title 28 U.S.C. § 1746,  with this his Supplemental Sworn Affidavit in Support of Petitioner Viera's Motion to Correct and/or Vacate Sentence pursuant to Title 28 U.S.C. § 2255 and provides as follows:

1.  Approximately late December 2008 I visited Attorney Mr. Mourin inquiring if there were additional documents related to my Uncle's case.

2. I remember I had read the letter from Attorney Shuster mentioning a plea offer in this case so I wanted to try to obtain a copy of the plea agreement that was offered.

3. He advised me that he did not recall if it was a written plea offer or a verbal plea offer, but he assured me that a plea was offered to my Uncle to serve approximately 48 months incarceration.

—C —

4. He advised me that he had no documents related to the case, specifically he did not have any copies of the alleged plea offer. He did assure me that there was a plea offer in this case and he was pretty sure that it was a verbal offer.

5. He did not advise whether my Uncle was ever offered the plea, however, I never saw nor heard of the plea agreement prior to reading Mr. Shuster's letter.

Done this _15_, day of January 2009

Respectfully submitted,

Jorge Pujol

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ROBERTO VIERA,
       Petitioner,


vs.                               Docket No.: 05-20483-CR-Goldberg



UNITED STATES OF AMERICA
       Respondent.
_____/

## SUPPLEMENTAL SWORN
## AFFIDAVIT JORGE PUJOL

COMES NOW, Petitioner, Jorge Pujol, *pro-se* pursuant to Penalty of Perjury under Title 28 U.S.C. § 1746,  with this his Supplemental Sworn Affidavit in Support of Petitioner Viera's Motion to Correct and/or Vacate Sentence pursuant to Title 28 U.S.C. § 2255 and provides as follows:

1.  Approximately late December 2008 I visited Attorney Mr. Mourin inquiring if there were additional documents related to my Uncle's case.

2. I remember I had read the letter from Attorney Shuster mentioning a plea offer in this case so I wanted to try to obtain a copy of the plea agreement that was offered.

3. He advised me that he did not recall if it was a written plea offer or a verbal plea offer, but he assured me that a plea was offered to my Uncle to serve approximately 48 months incarceration.

-D-

4. He advised me that he had no documents related to the case, specifically he did not have any copies of the alleged plea offer. He did assure me that there was a plea offer in this case and he was pretty sure that it was a verbal offer.

5. He did not advise whether my Uncle was ever offered the plea, however, I never saw nor heard of the plea agreement prior to reading Mr. Shuster's letter.

Done this 15, day of January 2009

Respectfully submitted,

Jorge Pujol