UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL CASE NO.: 09-20508-TURNOFF
(CRIMINAL CASE NO.: 05-20483-CR-GOLDBERG)

**ROBERTO VIERA,**

 Movant,

v.

**UNITED STATES OF AMERICA**

 Respondent.

_____/

**THE UNITED STATES' SUPPLEMENTAL RESPONSE IN OPPOSITION TO
MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255 (CivDE:1)**

 The United States of America by and through the undersigned Assistant United States Attorney files this Supplemental Response to Roberto Viera's (the Movant) Motion to Vacate pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Motion should be denied.

**BACKGROUND FACTS[1]**

 On February 27, 2009, the Movant filed a Motion to Vacate pursuant to 28 U.S.C. § 2255. Therein, he raised the following issues:

 (1) Counsel rendered ineffective assistance by failing to advise the Movant of the applicability of the Federal Sentencing Guideline and relevant conduct.

 (2) Counsel rendered ineffective assistance of counsel by failing to inform the Government of the Movant's desire to cooperate.

---

[1] The United States adopts and incorporates the facts stated in its answer to the Movant's Motion to Vacate pursuant to 28 U.S.C. § 2255. (CivDE:19:1-3).

1

(3) Counsel rendered ineffective assistance by failing to inform the Movant of the Government's plea offer.

On the April 30, 2012, United States responded in opposition to the Movant's § 2255 motion asserting that the Movant's motion lacked merit since it was based on frivolous and blatantly false allegations.

The Court held an evidentiary hearing on August 22, 2012 to further explore the allegations raised by the Movant.

## ADDITIONAL FACTS:

The following additional facts were developed during the evidentiary hearing:

### A. The Plea Offer

**Based upon the testimony of Assistant United States Attorney Andrea G. Hoffman:**

- The plea offer was made orally immediately after the polygraph examination results. CivDE:33:14

- No written agreement was prepared or sent to defense counsel because the defendant turned it down immediately. CivDE:33:9,14

- The plea offer was to a telephone count which was outside of the indictment. CivDE:33:10

- The telephone count had a maximum 48 month sentence. CivDE:33:10

- The Defendant was charged with a 10 year minimum mandatory sentence. CivDE:33:14

- The plea offer had to be approved by management of the United States Attorney's Office and such approval was contingent upon the results of the polygraph examination. CivDE:33:12

**Based upon the testimony of Jason Grey, former counsel for Roberto Viera:**

- Mr. Grey was present when the plea offer was conveyed. CivDE:33:24

- The Government was offering a phone count, which was an extremely unusual offer. Mr. Grey had only received such an offer twice in his career. CivDE:33:27

- Both counsel were present when the offer was conveyed to the defendant. CivDE:33:27

- Mr. Grey characterized it as a great offer, like finding gold in a copper mine. CivDE:33:28

**Based upon the testimony of Juan Mourin, former counsel for Roberto Viera:**

- The plea offer wasn't conveyed in writing from the prosecutor or by defense counsel because Mr. Viera rejected it so quickly. CivDE:33:40

- Mr. Mourin had multiple conversations with the defendant explaining the Movant's exposure in the case. CivDE:33:42

- Mr. Mourin is certain that he explained the details of the plea offer to Mr. Viera and that Mr. Viera rejected the offer. CivDE:33:42,49

- Mr. Mourin remembers this offer so clearly because it was the only time he has ever received a plea offer to a telephone count. CivDE:33:41

- The Defendant was adamant he wasn't going to accept any offers. CivDE:33:42

- Mr. Mourin didn't write anything about the plea offer because of the Movant's adamant rejection of the offer. CivDE:33:43

- Mr. Mourin strongly advised Mr. Viera to accept the offer. CivDE:33:43

**Based upon the testimony of Jorge Pujol, nephew of Roberto Viera:**

- Mr. Pujol acknowledged that Mr. Viera never expressed an interest in accepting a plea to close out the case. CivDE:33:52

B. **Movant's offer of cooperation**

**Based upon the testimony of Assistant United States Attorney Andrea G. Hoffman:**

- Defense counsel first informed the government of Roberto Viera's desire to cooperate after the trial. CivDE:33:18

- The offer of cooperation did not arise prior to the polygraph examination. CivDE:33:19

- Defense counsel informed the government of the nature of the cooperation providing the topics or persons against whom the defendant wanted to cooperate. CivDE:33:18

- It was within the government's sole discretion to reject the offer of cooperation and the government chose not to avail itself of Roberto Viera's offer of cooperation. CivDE:33:18

**Based upon the testimony of Jason Grey, former counsel for Roberto Viera:**

- Jason Grey had no information that the defendant wanted to cooperate prior to the conclusion of the trial. CivDE:33:25

- The defendant wanted to fight the case. CivDE:33:26

- The defendant felt he hadn't done anything wrong. CivDE:33:26

- The defendant was not willing to plea, or cooperate or anything other than prove he was not guilty. CivDE:33:26

- The defendant maintained his innocence throughout. CivDE:33:34

- The defendant first expressed an interest in cooperation after trial. CivDE:33:34

**Based upon the testimony of Juan Mourin, former counsel for Roberto Viera:**

- The Movant's interest in cooperating certainly did not arise prior to his conviction. CivDE:33:46

- Prior to trial, the defendant absolutely did not indicate any desire to cooperate. He only wanted to go to trial. CivDE:33:46

**Based upon the testimony of Jorge Pujol, nephew of Roberto Viera:**

- Even his cousin acknowledged that the defendant never spoke of a desire to cooperate with his lawyers. CivDE:33:52

C. **Movant's knowledge of the Sentencing Guidelines**

**Based upon the testimony of Jason Grey, former counsel for Roberto Viera:**

- Mr. Grey went over the Sentencing Guidelines with the defendant. CivDE:33:31

- Mr. Grey would have explained that effect of the 48 month cap versus the range after a conviction. CivDE:33:31,34

4

- Mr. Grey would have shown the defendant the Guideline book and how the tables work.   CivDE:33:32, 33

- Mr. Grey would have discussed the Guidelines throughout the representation. CivDE:33:34

- The disparity in risks of trial versus the 48 month offer were made perfectly clear to the client.   CivDE:33:34,35

- The defendant understood the risks but maintained his innocence throughout the process.  CivDE:33:35

**Testimony of Roberto Viera that is contradicted by the testimony of AUSA Andrea Hoffman, Jason Grey and/or Juan Mourin:**

- The defendant claims that he never met Jason Grey.   CivDE:33:62
    - Never had any meetings with Jason Grey   CivDE:33:62
    - Never spoke with him   CivDE:33:75
    - Never spoke face to face  with Jason Grey.   CivDE:33:75,78

- Yet, Jason Grey met with the defendant several times in the federal detention center and throughout the course of the courtroom proceedings because he was the lead counsel in the trial.   CivDE:33:22

    - Furthermore, Mr. Grey went over the trial and preparation with him before trial and during trial.     CivDE:33:22

    - Moreover, Mr. Grey found the defendant understood what was occurring, Had no trouble communicating the concepts and was stubborn and insisted on his innocence.      CivDE:33:30

    - Mr. Mourin also found that the defendant clearly understood everything that was being discussed.    CivDE:33:46

- The defendant claims that he provided information about his desire to cooperate prior to the polygraph examination.     CivDE:33:63

- The defendant claims that he has a device implanted in his body that precluded him from passing the lie detector test.    CivDE:33:68

- The defendant claims that I was not at the polygraph examination. CivDE:33:69, 80

5

- ● And that he never had any conversation with me at all prior to December 31.    CivDE:33:69

● The defendant claims that Mr. Mourin:
  - ● never told him about the plea offer.    CivDE:33:70
  - ● Never showed him a Sentencing Guidelines.    CivDE:33:71, 72
  - ● Never discussed the benefit of a plea.    CivDE:33:71
  - ● Never explained relevant conduct.    CivDE:33:72
  - ● Learned of it from jailhouse lawyer.    CivDE:33:72

● The defendant claims that he never saw his PSI and never talked with Probation to prepare for the PSI.    CivDE:33:77

● The defendant claims that he couldn't have been adamant about innocence because knew he was guilty.    CivDE:33:80, 81

● The defendant claims that he answered the question at the polygraph as Mr. Mourin told him to.    CivDE:33:83

## DISCUSSION

**CLAIM 1: Counsel rendered ineffective assistance by failing to inform the Movant of the Government's plea offer.**

As demonstrated in the preceeding testimony, the Movant's allegation lacks merit. Mpreever, the Movant's testimony as to this issue highlights the Movant's intentional misrepresentation to this Court as to the facts of this case.    The crux of the Movant's § 2255 motion is that neither Counsel Mourin nor Counsel Grey told the Movant about the Government's plea offer. (CivDE:3:22). However, the record clearly refutes the Movant's allegation because AUSA Hoffman and both Counsel testified as to the same facts surrounding the plea offer.

Since the Movant maintained his innocence, the Government suggested that the Movant submit to a polygraph test.  (id. at 10, 17, 25-26,38).    If the Movant failed, the Government would offer a telephone count, and, if he passed, the Government would consider dropping the

charges. (id. at 12,16-17)[2]. Additionally, AUSA Hoffman testified that she especially remembered the events of this case because since she has only agreed to three polygraphs in her 24 year career as an AUSA. (id. at 19). She also testified that the Movant was only polygraphed because he maintained his innocence; a polygraph was useless if he wished to cooperate. (id. at 19).

Additionally, AUSA Hoffman, and Counsel "vividly" remembered the plea offer because it was an unusual count. (id. at 27, 41, 50). Counsel Grey specifically testified that in his 24 years of practice, a phone count has only been offered twice in his career. (id. at 27.). Counsel Mourin said it was the only time in his career there had been a phone count offer. (id. at 50). Counsel Mourin also testified that he probably discussed the plea offer and its advantages before the polygraph, but the Movant was "adamant" about not accepting any plea offers. (id. at 42).[3]

AUSA Hoffman, Counsel Mourin, and the Movant agreed that the polygraph took place at the DEA building in Doral, Florida. (id. at 11, 37,67). AUSA Hoffman, Counsel Mourin, and the Movant were present on that date. (id. at 11, 39).

After the polygrapher finished the examination, the polygrapher told AUSA Hoffman, Counsel Mourin, and the Movant, that the Movant failed the polygraph, and "failed extremely." (id. at 13.). Then the Government reiterated the terms of the phone count offer. (id. at 13-14, 41, 42). By all accounts, the Movant, who was very angry, immediately rejected the plea offer. (id. at 17, 40). AUSA Hoffman testified that the Movant rejected the offer so quickly that Counsel Mourin did not even have an opportunity to answer for the Movant. (id. at 17). At that point, the

---

[2] The plea was never memorialized because the telephone count was not included in the indictment, and the Government wanted to see if the Movant failed the polygraph before memorializing the offer. (id. at 10, 12, 50).

[3] Counsel Mourin stated that he probably took notes on his conversation with the Movant, but any notes were probably destroyed in a office fire. (id. at 42).

7

offer was no longer on the table. (id. at 14-15,17), and AUSA Hoffman then filed a superseding indictment. (id. at 19).

Although Counsel Mourin and AUSA Hoffman presented similar accounts as to the event, the Movant provided a completely different version of events. He testified that AUSA Hoffman was not present during polygraph test, and he was never presented with the plea offer. (id. at 69, 70, 79-80). His version of the events are implausible considering the polygraph was the Government's suggestion and the Government wanted to immediately know the results of the test to determine what additional actions were necessary in the criminal proceeding.

As explained previously, the Movant's testimony is riddled with contradictions. The Movant not only contradicted AUSA Hoffman and Counsel's version of events, but also contradicted himself. Both AUSA Hoffman and Counsel agreed that the polygraph occurred because the Movant maintained his innocence. (id. at 10, 19, 30). Obviously the Government would not suggest a polygraph examination if the Movant admitted his guilt. (id. at 19). It would be counterintuitive to polygraph the Movant to determine if he is lying about his guilt. Yet, the Movant testified he always admitted he was guilty as charged. (id. at 83). The Government submits, and the record reflects, the reverse is true- the Movant agreed to the polygraph because he maintained his innocence. And, he rejected the plea offer on the day of the polygraph because he wanted to proceed to trial to prove his innocence.[4] As such, the Movant's claim that he was not informed of the plea offer is meritless.

---

[4] Even Counsel Grey testified he did now know whether the Movant was in fact guilty, and that the Movant had an uncharacteristically 50% chance of winning at trial, which is good for a Federal case. (id. at 31).

**CLAIM 2: Counsel rendered ineffective assistance of counsel by failing to inform the Government of possible cooperation by the Movant.**

Next, the Movant asserted that Counsel was ineffective by not informing the Government of the Movant's desire to cooperate. (CivDE:3:12). Specifically, the Movant testified that he gave Counsel Mourin "the information to cooperate with the government, that was, like before, before the lie detector." (id. at 63). However, it is clear from the testimony that the Movant contested the charges and did not believe he acted unlawfully. (id. at 25-26,34). Further, Counsel Grey stated that when the Movant was asked about the plea offer, the Movant commented something along the lines of "They are going to give me four years. They mind [sic] as well give me life. I didn't do anything. I am not going to take four years. I am innocent." (id. at 35). Both Counsel Grey and Counsel Mourin also testified that the Movant did not want to cooperate before trial, but instead desired to proceed to trial. (id. at 34, 46, 47). It was only after his conviction that he expressed a desire to cooperate, but the Government was not interested at that point. (id. at 19, 34).

Moreover, although the Movant maintained his ultimate desire was to cooperate, when asked what he wished to receive in return for his cooperation, he said he wanted to "clarify" his case. (id. at 65). When asked if wanted a plea agreement, he said he did not know what a plea agreement was. (id. at 65). The exchange was as follows:

> Q. What was your desire with giving this information to Mr. Mourin?
>
> A. I desired to give this information to Mr. Mourin because I knew nothing about the law. I said look, Juan, I need you to help me with my case because I know nothing about the law. Guide me. I was told that if I cooperated with the U.S. government, I can clarify my case.
>
> Q. Were you hoping to have a plea agreement in exchange for your cooperation?
>
> A. No. I had nothing. We did not discuss it. When I told him that, he said to me "don't get into anymore problems." Pardon me, Your Honor. I am very nervous.

> Q. The question was were you hoping to have a plea agreement in exchange for your cooperation?
>
> A. I don't know. I don't know what a plea agreement is. I did not know what that was.

(id. at 65).

The Movant now wants this Court to believe that he desired to cooperate, but did not want a plea agreement in return, since he did not know what a plea agreement was. (id. at 65). The Movant also wants this Court to believe that Counsel did not want to transmit this information to the Government to avoid "anymore problems." (id. at 65). This testimony is patently frivolous because Counsel testified that the Movant did not want to enter into a plea agreement because he contested the charges. (id. at 25-26,34). The Movant maintained this position and even agreed to undergo a rigorous polygraph examination to prove his innocence. (id. at 67). When asked why he failed, the Movant testified that it was not because he lied during the polygraph, but because of an implanted device in his lower back, which doctors warned, would affect his ability to pass a polygraph. (id. at 67-68).[5]

### CLAIM 3: Counsel rendered ineffective assistance by failing to advise the Movant of the applicability of the Federal Sentencing Guidelines and relevant conduct.

The Movant alleges that Counsel was ineffective by failing to provide a basic explanation of the Sentencing Guidelines and their application to the Movant's case. (CivDE:3:13). In the Government's response, it argued that both Counsel recounted specific discussions that they had with the Movant regarding the Sentencing Guidelines and the impact relevant conduct had upon the calculation of the Guidelines. (CivDE:13:4).

---

[5] The Movant alleges that when he communicated this concern to the polygrapher, the polygrapher told him "that there was no problem with that because the government had already spoken with my doctor, and the doctor had told them that I could pass the lie detector." (id. at 68).

Both Counsel Mourin and Counsel Grey testified that they review and discuss the Sentencing Guideline with every defendant as a matter of habit.  (id. at 31, 32, 34, 48). Counsel Grey also stated that he probably explained to the Movant the term of incarceration the Movant would be facing with and without the plea offer. (id. at 31, 48). Furthermore, both Counsel testified that they probably reviewed the table in the guidelines book. (id. at 32, 34, 48).

Nonetheless, the Movant expects this Court to believe that neither Counsel Grey nor Counsel Mourin explained to him what the Sentencing Guideline and relevant conduct were.  (id. at 72).  And, moreover, that the Movant only found out what the guidelines was when an unnamed individual explained it to the Movant in a library. (id.).[6] The Movant's argument is unbelievable for numerous reasons.  First, as will be explained, *infra*, the Movant is not a reliable witness since he intentionally misrepresented the facts during the evidentiary hearing.  Second, according to the Movant's nephew, the Movant met with Counsel an approximate of 4-5 times before trial, and it is implausible that during those extensive meetings, something as fundamental as the sentencing guideline and relevant conduct were not discussed. (id. at 56).

In essence, the Movant wants this Court to believe that Counsel were ineffective in every sense because Counsel did not advise the Movant of anything.  According to the Movant, Counsel never advised the Movant of the guidelines, relevant conduct, acceptance of responsibility, safety valve, plea offer or reviewed the presentence investigation report with the Movant. (id. at 71-73,77).  It is unbelievable that Movant met with Counsel several times yet those imperative issues were never discussed.   Accordingly, the Movant's claim lacks merit.

---

[6] That unnamed individual was not the PSI officer, since, according to the Movant, the PSI officer never interviewed him.  (id. at 77).

11

**WHEREFORE**, the United States of America respectfully requests that this honorable Court summarily deny Movant's § 2255 motion.

>Respectfully Submitted,
>
>WIFREDO A. FERRER
>UNITED STATES ATTORNEY
>
>By: s/Andrea G. Hoffman
>Andrea G. Hoffman
>Assistant United States Attorney
>Court No: A5500885
>11200 N.W. 20th Street
>Miami, Florida 33172
>Tel: (305) 715-7642/Fax: (305) 715-7639

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 7, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: s/Andrea G. Hoffman
Andrea G. Hoffman
Assistant United States Attorney